## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**DEBORAH GARRETT,**

**Plaintiff,**

**v.**                                                              **Case No: 8:14-cv-686-T-27AEP**

**THE PRUDENTIAL INSURANCE**
**COMPANY OF AMERICA,**

**Defendant.**

_____/

## ORDER

**BEFORE THE COURT** are competing motions for summary judgment (Dkts. 18, 19).

Upon consideration, Defendant's Motion for Summary Judgment (Dkt. 18) is GRANTED and

Plaintiff's Motion for Summary Judgment (Dkt. 19) is DENIED. After careful consideration of the

record, the Court concludes that Prudential's decision to deny Plaintiff's claim for long-term

disability benefits was not wrong or unreasonable.

## I.    INTRODUCTION

Plaintiff brought this action under Section 502(a)(1)(B) of the Employee Retirement Income

Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), alleging that Prudential violated ERISA

when it terminated her claim for long-term disability ("LTD") benefits under the LTD plan ("the

Plan") sponsored by her employer, Health Management Associates, Inc. ("HMA").  Prudential

insures the Plan and serves as its claims administrator.

Although, as will be discussed, the Plan unambiguously vests Prudential with full discretion

to determine Plaintiff's eligibility for LTD benefits under the plan, a *de novo* review of its decision

1

to deny Plaintiff's claim for LTD benefits confirms that its decision was not wrong. And, after review under the more deferential arbitrary and capricious standard, Plaintiff has not demonstrated that Prudential's decision was unreasonable..

## II.    FACTUAL BACKGROUND

The factual record is largely undisputed.  HMA provides LTD benefits to its eligible employees through a group contract with Prudential. A Group Insurance Certificate which details the terms of LTD coverage.  (AR 1-65, 100-145).[1]  HMA also maintains an Employee Benefit Plan document (AR 146-182) which incorporates the disability insurance contracts. (AR 157).

Plaintiff worked as a Director of Nursing Services for HMA until August 8, 2012, when she contends she became disabled.  She claims she suffers from several conditions, including Klippel-Feil Syndrome, cervical disk disease and herniated discs at C5-6 and C6-7 with radiculopathy, migraines, lumbar disc disease, fibromyalgia, anxiety and depression, thoracic radiculitis, carpal tunnel syndrom, adhesive capsulitis, hepatitis C, adrenal fatigue & depressed immune system, asthma, hypertension, GERD, and gastroparesis (Dkt. 19 at 2).

Prudential initially approved Plaintiff for short-term disability ("STD") benefits, and on October 24, 2012, for LTD benefits while it obtained updated medical records.[2] (AR 979-981, 957-959). On or about February 1, 2013, Prudential received updated medical records from Plaintiff's providers, including notes from her neurosurgeon, Dr. Ronzo, who opined that Plaintiff might need a fusion surgery, and an MRI from September 25, 2012 reflecting a medium herniation in Plaintiff's

---

[1]  The parties do not dispute that the claims file attached to Defendant's motion for summary judgment (Dkt. 17) represents the administrative record relevant to Plaintiff's claim.  Documents within the administrative record will be identified as "AR" followed by the last three digits of the bates number at the bottom of the document.

[2] The internal capacity/clinical reviewer of Plaintiff's medical records was initially unable to form an opinion regarding Plaintiff's condition because of inadequate medical records. (AR 838-843.)

back. (AR 825-26.) Prudential had an internal physician, Dr. Jonathan Mittelman, review the updated medical records. (AR 824-825.) Dr. Mittelman concluded that Plaintiff had chronic neck pain that was being appropriately treated and was not in need of immediate surgery. (*Id.*) Dr. Mittelman also concluded that Plaintiff has certain limitations due to self-reported pain involving excess neck movement and that it was reasonable to restrict Plaintiff from lifting more than 20lbs on an occasional basis and from performing overheard work. (*Id.*)

Prudential also obtained an external mental health assessment of Plaintiff from an independent reviewer, Dr. Galina German, PsyD., LPC. (AR 552-555.) Dr. German concluded there were no records to confirm that Plaintiff needed continuous mental health treatment and that the clinical information did not support functional limitations or restrictions from a psychological perspective from February 1, 2013 forward (AR 555.) She noted that Plaintiff's mental health providers reported Plaintiff's mental status to be within normal limits, with no reports of depressive symptoms and that her medications and therapy sessions with Dr. Balandra did not indicate she was experiencing acute symptoms consistent with an impairing condition. (*Id.*) Dr. German further found any claim of mental health limitation belied by the fact that Plaintiff spent six-weeks out of state caring for her mother in late 2012. (*Id.*)

Prudential also conducted an internal regular occupation review and vocational assessment. (AR 817-820.) Diana Mitchell, MS, CRC, using a job description from Plaintiff's employer and referencing the Dictionary of Occupational Titles, determined Plaintiff's regular occupation requires her to oversee her employer's nursing department, including quality care and accreditation.[3] (AR

---

[3] The essential job functions as described in Health Management Associates' job description for Plaintiff's position are as follows:

818.) Specifically, Plaintiff's position deals largely with the overall operation of the nursing department, including policy creation, preparation of departmental budget, drafting procedures, and handling personnel issues. (AR 819.) Ms. Mitchell concluded that this is a sedentary position requiring lifting, carrying, pushing, and pulling 10 lbs occasionally, mostly sitting and may involve standing or walking for brief periods of time, and requires occasional reaching, handling, and fingering, but no overhead work. (AR 820.)

In light of the medical and vocational reviews, Prudential concluded that Plaintiff did not meet the plan's definition of disability and terminated her LTD benefits effective March 1, 2013. (AR 940-944.) Prudential advised Plaintiff that her physical limitations--ability to lift 20 lbs on occasion and no overhead work--would not impede her ability to perform the material and substantial duties of her regular occupation. (AR 943.)

Plaintiff appealed. (AR 537-539.) In support of her appeal, she submitted additional medical records, claiming that they established that she was physically and mentally prevented from returning to work. (*Id.*) Plaintiff asserted Prudential's analysis was flawed because its review of her mental health was performed by a Doctor of Psychology, rather than a medical doctor. (AR 537.) In addition, she claimed that during her six-week trip visiting her mother, she provided emotional

---

• Directs all Nursing Service Employees
• Participates with the Chief Executive Officer, management, and medical staff in developing the hospital's mission, strategic plans, operation plans, and policies;
• Manages the clinical and administrative aspects of Nursing Service;
• Responsible for planning, organizing, staffing, budgeting, directing, and controlling of all Nursing Service;
• Coordinates ancillary services and other departments to achieve facility goals;
• Carries the leadership responsibilities for other departments as determined by the Chief Executive Officer.
(AR 735.) In addition, the physical abilities requirements include sitting continuously (67%-100%), walking frequently (34%-66%), standing occasionally (1%-33%), lifting 0-50 lbs frequently, lifting 50+ lbs occasionally, carrying 0-50 lbs frequently, carrying 50+ lbs occasionally, and pushing 0-300 lbs occasionally. (AR 741.)

support rather than actual care. (*Id.*)  Finally, Plaintiff argued Prudential underestimated her job duties and responsibilities. (*Id.*) Specifically, Plaintiff contended that her position requires her to be highly active, work sixty hours per week, and "often she needs to lift, pull, and move." (*Id.*)  Plaintiff also submitted letters from her treating physicians stating that she was disabled and unable to work. (AR 538-539.)

Prudential referred the appeal to independent reviewer Rosyln Wright, PhD Psychology, with an added expertise in Neuropsychology. (AR 463-468.) Dr. Wright found that Plaintiff's medical records were lacking in objective or quantitative data and were grounded largely on Plaintiff's self-report (*Id.*)  She also found the reports unsubstantiated, given that Plaintiff's treating providers repeatedly affirmed Plaintiff's normal mental state. (*Id.*) Dr. Wright noted that two of Plaintiff's providers, Drs. Tracy and Fattah, described Plaintiff's mental status as normal, while a third treating physician, Dr. Hiba, noted that Plaintiff was "pleasant," had a "good memory, good judgment and a normal affect and fully oriented." (AR 465.) Dr. Wright also concluded that Dr. Basler's opinion that Plaintiff is unable to think and concentrate due to physical and emotional pain was not supported by objective evidence and that Dr. Basler's opinion was contradictory to notes of other doctors. (AR 467.) Dr. Wright concluded that Plaintiff had no medically necessary restrictions and/or limitations from any psychological and/or cognitive symptoms from March 1, 2013 forward. (AR 466.)

Prudential also referred the appeal to Dr. Victor Isaac, M.D., who is board certified in physical medicine and rehabilitation, with a subspecialty certificate in pain medicine. (AR 470-474.) Dr. Isaac noted that Plaintiff's examinations showed no musculoskeletal or neurological deficits. (AR 472.) He also noted that two of Plaintiff's doctors appeared to agree.  Specifically, Dr. Fattah reported "good improvement of the [Plaintiff's] headaches . . . [and t]he exam did not show any

neurological deficit," and Dr. Disanto noted Plaintiff "was neurologically intact." (*Id.*) Dr. Isaac acknowledged that Dr. DiSanto indicated that Plaintiff was unable to work due to the combination of multiple medical conditions. (AR 473) However, Dr. Isaac opined that this conclusion was not medically reasonable from a pain management perspective because Plaintiff had normal musculoskeletal and neurological examinations. (*Id.*)

On June 28, 2013, Prudential notified Plaintiff that it was upholding the termination of her LTD benefits. (AR 924-929.) Prudential determined that there was insufficient medical evidence to support Plaintiff's claim that she would be precluded from performing the material and substantial duties of her regular occupation. (AR 928-929.) Relying on Dr. Isaac's and Dr. Wrights' evaluations, Prudential determined that the opinions of Plaintiff's treating providers had not been validated through examination findings, diagnostic findings, observations, or mental status evaluations, and therefore found that Plaintiff did not have a severe impairment of functional capacity. (AR 928).

Plaintiff submitted a second appeal, claiming that she was not able to return to work due to both physical and psychological conditions. (AR 328.) In support, Plaintiff submitted a report of an independent medical examination performed by Dr. George Adams, letters from Dr. Tracy, Dr. Tabarishy, Dr. DiSanto, and Dr. Basler, and medical records from Dr. Hiba. (*Id.*) Plaintiff also claimed that Prudential appeared to be importing terms into the plan documents and requirements for disability and that Prudential had demonstrated bias in its review of Plaintiff's claim. (*Id.*)

Dr. Adams, Plaintiff's Independent Medical Examiner, examined Plaintiff, reviewed her file, and concluded that she was permanently and totally disabled from "cervical disk disease with radiculopathy and associated migraine headache, lumbar disk disease with sciatica, fibromyalgia, anxiety and depression, and the additional above-cited diagnoses." (AR 309.)

The four letters from Plaintiff's treating physicians stated that Plaintiff was disabled. Plaintiff's Board Certified Pain Management Physician, Deborah Tracy, MD, concluded that she suffered from cervical spine stenosis, cervical herniated discs, chronic headaches and intractable pain, that she has lumbar radiculopathy with reflex discrepancies and has suffered from migrainous-type headaches, fibromyalgia, hepatitis C, frozen shoulders, and depression, and that she was incapable, beyond a reasonable doubt, of performing the tasks required for part-time or full-time work and was a candidate for 100% disability. (AR 331.) Her Board Certified Orthopedic Surgeon, Dr. Imad E. Tarabishy, stated that he was in support of her long-term disability based upon medical necessity (AR 244.) Her primary care provider, Dr. L. M. DiSanto, D. O., stated that she is not in any condition to entertain full time employment. (AR 258.) Finally, Plaintiff's psychologist, Dr. Cynthia Basler, Psy.D, opined that due "to her physical and psychological problems, Ms. Garrett often finds it difficult to participate in light daily activities (getting out of bed, cleaning, organizing, short excursions into the community) and has been unable to work. Accordingly she requires disability support." (AR 231.)

As part of the second appellate review, Prudential sent the additional medical records and physician letters to Drs. Wright and Isaac to determine whether the records and letters altered their prior conclusions. (AR 199-204; 224-229.) The new records did not change Dr. Wright's prior opinion. (AR 199-204). She noted that the additional records did not contain objective information necessary to substantiate Plaintiff's claim and that her treating providers' conclusions appeared to be based entirely on Plaintiff's self-report. (AR 201.) Dr. Wright rejected Dr. Adams' opinion that Plaintiff is permanently and totally disabled for three reasons.  First, the referral was initiated by Plaintiff's attorney. (*Id.*)  Second, Dr. Adams did not provide objective evidence to support his

findings. (*Id.*) Third, Dr. Adams described Plaintiff as "pleasant, alert, oriented and cooperative" and indicated her appearance was within normal limits and that she arrived on time. (*Id.*)  Dr. Wright similarly rejected the opinions of Dr. Tracy, Dr. Tabarishy, and Dr. DiSanto that Plaintiff is unable to work because she found them to be unsupported by objective evidence (AR 202.)  And, she found their notes to be inconsistent with their opinions.  Dr. Wright also attempted to speak with Dr. Basler by telephone, who chose to respond in writing. (AR 202.) Dr. Basler's response did not alter Dr. Wright's previous opinion because she was unable to provide substantive information to address Dr. Wright's concerns about the subjectivity of the documentation submitted in support of Plaintiff's claim. (AR 202-203.)   She concluded that there was no evidence Plaintiff has any clinically significant psychological or neuropsychological symptoms. (AR 199-204.)

Dr. Isaac also concluded that the updated medical records and letters did not alter his opinion. He reiterated that Plaintiff does not have any medically necessary restrictions or limitations that prevent her from performing a sedentary occupation. (AR 224-229.) In support, he noted Plaintiff's treating physicians offered no evidence of any neurological deficits. (AR 228.) Dr. Fattah and Dr. Ronzo, two of Plaintiff's treating physicians, did not report motor weakness of bilateral upper extremities and reported a normal neurological exam.  (*Id.*) Although Dr. Tracy did report motor weakness, Dr. Isaac discounted Dr. Tracy's finding because it conflicted with the conclusions of Drs. Fattah and Ronzo. (*Id.*) Dr. Isaac also  had a telephone conversation with Dr. Tracy which did not alter his previous opinion.[4]  Dr. Isaac found that it was reasonable for Plaintiff to have temporary limitation and restriction as to the use of her hands due to a carpal tunnel release surgery, but that

---

[4] Dr. Tracy stated that she records motor strength differently than other providers and that she and Plaintiff used to work together. (AR 228.)

such restrictions would last only four weeks. (AR 227.)

As part of the second appellate review, Prudential also had Plaintiff's claim reviewed externally by Dr. Frank Polanco, board certified in occupational medicine, with an added expertise in pain medicine. (AR 214-222.) Dr. Polanco noted degenerative spine findings with accompanying symptoms of decreased neck motion and tenderness which would reasonably restrict her lifting and physical functioning and work capacity to a light level with lifting and carrying up to 20 lbs. (AR 220.) However, Dr. Polanco also noted that "there are no findings that would restrict or limit normal and routine activities such as sitting, walking, standing, or use of her upper and lower extremities with the restrictions noted." (*Id.*) Dr. Polanco further noted functional range of motion and strength in Plaintiff's upper extremities, citing neurological exams that were unremarkable. (*Id.*) Based on these conclusions, he found that while Plaintiff does exhibit some limitations, these limitations "are not incapacitating or functionally limiting." (AR 221.)

On March 13, 2014, Prudential notified Plaintiff that it was upholding the termination of LTD benefits. (AR 905-912.) It determined that Plaintiff's medical records did not support Plaintiff's claimed inability to perform her regular occupation. (*Id.*) Prudential reasoned that while Plaintiff does have some restrictions and limitations (i.e. inability to lift greater than 20 lbs), those restrictions were not sufficiently severe to impair her ability to perform the material and substantial duties of her regular occupation, as it does not require her to lift greater than 10 lbs. (AR 911.)

## III.    THE PLAN

HMA provides LTD benefits to its eligible employees through a group contract with Prudential and a related Group Insurance Certificate. (AR 1-65; 100-145.) The Group Insurance Certificate details the terms of the LTD coverage. (AR 100-145.) HMA also maintains a master

9

welfare benefit plan document entitled "Health Management Associates, Inc. Employee Benefit Plan" (the "HMA plan document"). (AR 146-182.) In addition, a Summary Plan Description ("SPD") describes the LTD Plan and informs employees of their rights under the LTD Plan. (AR 139-145.)

Under the terms of LTD coverage, an individual is disabled when Prudential determines that:

- you are unable to perform the ***material and substantial duties*** of your ***regular occupation*** due to your ***sickness*** or ***injury***;

- you are under the ***regular care*** of a ***doctor***; and

- after the first 12 months of your disability, you have a 20% or more loss in your ***monthly earnings*** due to that sickness or injury.

* * *

Prudential will assess your ability to work and the extent to which you are able to work by considering the facts and opinions from:

- your doctors; and

- doctors, other medical practitioners or vocational experts of our choice.

* * *

***Material and substantial duties*** means duties that:

- are normally required for the performance of your regular occupation; and

- cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Prudential will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.

***Regular occupation*** means the occupation you are routinely performing when your disability begins. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.

10

> ***Sickness*** means any disorder of your body or mind, but not an injury; pregnancy including abortion, miscarriage or childbirth. Disability must begin while you are covered under the plan.

(AR 113-114.)

The HMA Plan document provides that the Plan shall be under the supervision of the Administrator.  With respect to the Administrator's Powers, the HMA plan document provides:

> The Administrator shall have *full power to administer the Plan* in all of its details, subject, however, to the pertinent provisions of the Code.  The Administrator's powers shall include, but shall not be limited to the following authority, in addition to all other powers provided by this Plan:
>
> (a) *To make and enforce such rules and regulation* as the Administrator deems necessary or proper for the administration of the Plan;
>
> (b) *To interpret the Plan*, the Administrator's interpretations thereof in good faith to be final and conclusive on all persons claiming benefits by operation of the Plan;
>
> (c) *To decide all questions concerning the Plan and the eligibility of any person to participate in the Plan and to receive benefits* provided by operation of the Plan;
>
> . . .
>
> (h) To appoint such agents, counsel, accountants, consultants, and actuaries as may be required to assist in administering the Plan.
>
> Any procedure, discretionary act, interpretation or construction taken by the Administrator shall be done in a nondiscriminatory manner based upon uniform principles consistently applied and shall be consistent with the intent that the Plan shall continue to comply with the terms of Code Section 125 and the Treasury regulations thereunder.

(AR 175-176) (emphasis added).  In addition, the SPD provides:

> The Prudential Insurance Company of America as Claims Administrator *has the sole discretion* to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits. The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious.

(AR 141) (emphasis added).

11

## IV.    STANDARD

### A.    ERISA Standard of Review

While ERISA does not include a standard of review of decisions of a plan administrator or fiduciary in actions challenging benefit determinations under § 1132(a)(1)(B), "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). ; *Paramore v. Delta Air Lines,* 129 F.3d 1446, 1449 (11th Cir. 1997). When reviewing a plan administrator's benefit-eligibility decision, a six-step process is applied:

(1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" ( *i.e.,* the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and he *was* vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011); *Williams v. BellSouth Telecommunications, Inc.*, 373 F.3d 1132, 1138 (11th Cir. 2004).

### B.      Summary Judgment in an ERISA Case

Rule 56 provides that summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Court must view all evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 911 (11th Cir. 2007).

When the deferential standard of review applies, evidence is rarely taken and the usual tests for summary judgment, such as whether genuine issues of material fact exist, do not apply.  *Curran v. Kemper Nat. Servs., Inc.,* No. 04-14097, 2005 WL 894840, at *7 (11th Cir. March 16, 2005) ("In an ERISA benefit denial case . . . in a very real sense, the district court sits more as an appellate tribunal than as a trial court.  It does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary."); *see Providence v. Hartford Life & Acc. Ins. Co.*, 357 F. Supp. 2d 1341, 1342 (M.D. Fla. 2005); *Crume v. Met. Life Ins. Co.,* 417 F. Supp. 2d 1258, 1272 (M.D. Fla. 2006).

## V.      DISCUSSION

### A.      *De Novo* Review

At the first step, the administrator's decision is reviewed *de novo* to determine whether it was wrong. Based on the evidence before the administrator at the time it made its decision, the court evaluates whether it would have reached the same decision.  *Melech v. Life Ins. Co. of N. Am.*, 739 F.3d 663, 672-73 (11th Cir. 2014); *Blankenship*, 644 F.3d at 1354–55.  In other words, the decision is wrong if the court disagrees with the administrator's decision. *Capone v. Aetna Life Ins. Co.*, 592

13

F.3d 1189, 1196 (11th Cir. 2010) (quoting *Williams*, 373 F.3d at 1138).  "If the decision is correct, the court goes no further and grants judgment in favor of the administrator."  *Melech*, 739 F.3d at 673.

Both parties contend they are entitled to judgment as a matter of law under the *de novo* standard.  Plaintiff contends that Prudential's decision is wrong for three reasons.  First, it rejected the opinion of four treating physicians who opined that she is disabled and unable to work. Second, Prudential relied on medical experts who did not address or rebut the conclusions of Plaintiff's Independent Medical Examiner and who improperly made credibility determinations.   Third, Prudential selectively reviewed the medical evidence.

In defending its decision, Prudential contends that Plaintiff's medical records contain no physical or psychological findings that restrict or limit her from performing the normal and routine activities of her regular occupation and therefore she is not disabled under the terms of the Plan.

After a *de novo* review of the record, the Court concludes that Plaintiff is not disabled under the terms of the Plan and therefore Prudential's decision to terminate her LTD benefits was not wrong. While Plaintiff may suffer from an array of ongoing medical problems and chronic pain, the question presented by her claim is whether her medical conditions are sufficiently work-preclusive to establish disability under the Plan.   To prove entitlement to LTD benefits, Plaintiff must demonstrate that she was disabled from performing the "material and substantial duties" of her "regular occupation due to [her] sickness or injury;" that she is under the regular care of a doctor; and that after the first 12 months of her disability, she had a 20% or more loss in monthly earnings due to that sickness or injury.  At issue is whether Plaintiff is able to perform the material and substantial duties of her regular occupation due to her medical conditions.

It is undisputed that Plaintiff's treating physicians diagnosed her as having a number of medical conditions.  It is also undisputed that Plaintiff's treating physicians and an independent medical examiner opined that she is disabled and unable to work. However, Prudential's peer-reviewing physicians contrarily opined that she had no medically necessary restrictions or limitations and that her treating physicians' opinions regarding her ability to work were unsupported, with the exception of Drs. German and Polanco who limited her to a light level of work restricted to lifting and carrying up to 20 pounds and no overhead work. (AR 220.).

Although a plan administrator "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician," an administrator is not required to give special deference to the opinions of a claimant's treating physicians. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003); *Ray v. Sun Life & Health Ins. Co.*, 443 Fed. App'x 529, 533 (11th Cir. 2011) ("No special weight is to be accorded the opinion of a treating physician."). The administrator also has no burden of explanation when it credits reliable evidence that conflicts with a treating physician's evaluation.  *Nord*, 538 U.S. at 834.

Plaintiff's physicians' conclusions that she is totally disabled are contrary to the assessments of five non-examining medical experts who reviewed Plaintiff's medical records, her treating physician's assessments, and Dr. Adams' IME report.  Those experts opined that Plaintiff was capable of returning to her regular occupation.  In rejecting her treating physicians' and Dr. Adams' conclusions, the reviewing doctors noted inconsistencies between their opinions and notes, that they largely relied on Plaintiff's self-report, and that the opinions were unsupported by objective medical evidence. Prudential's reliance on those opinions was not wrong.

Nor was it wrong to give little or no weight to the treating physicians' letters, since they were

conclusory and do not take into consideration the Plan's definition of disability as it relates to Plaintiff's ability to perform the material and substantial duties of her regular occupation.[5] Rather, the letters merely identify her medical conditions and conclude that she is not able to entertain full-time employment. *See Harvey v. Standard Ins. Co.*, 503 Fed. App'x 845, 849 (11th Cir. 2013) ("Each of Standard's record reviewers acknowledged that Harvey had degenerative disc disease, but concluded that Harvey could perform sedentary work level activities with a sit/stand work accommodation. On the other hand, Harvey's physician diagnosed her with lumbar disc degeneration and scoliosis, but never provided information regarding her level of functional impairment or the amount of work activity in which she could engage."). Accordingly, while the letters are not to be completely discounted, their persuasiveness is limited.

Moreover, although Plaintiff's treating physicians repeatedly documented her subjective complaints of pain and depression, diagnosed her based on those complaints, and prescribed a number of medications for treatment, none of the records confirm her disability status or assess her functional limitations *in relation to her ability to perform her occupational duties* with HMA, as defined by the Plan.

On the other hand, after noting degenerative spine findings with accompanying symptoms of decreased neck motion and tenderness which would reasonably restrict her lifting and physical functioning and work capacity to a light level with lifting and carrying up to 20 lbs, Dr. Polanco found that "there are no findings that would restrict or limit normal and routine activities such as sitting, walking, standing, or use of her upper and lower extremities with the restrictions noted." Dr. Polanco further found that Plaintiff's neurological exams were unremarkable and concluded that

---

[5] Indeed, Dr. Tarabishy's letter is two sentences long.

Plaintiff's limitations "are not incapacitating or functionally limiting."

In addition, Ms. Mitchell, in her vocational review and assessment, concluded that Plaintiff's regular occupation is a sedentary position requiring lifting, carrying, pushing, and pulling 10 lbs occasionally, mostly sitting and may involve standing or walking for brief periods of time, and requires occasional reaching, handling, and fingering, but no overhead work. While the job description for Plaintiff's actual position indicates it may require heavier lifting, carrying, pushing, or pulling, that description is not controlling under the Plan, which dictates that one is disabled when Prudential determines that she is unable to perform the material and substantial duties of her "regular occupation."

According to the Plan, "[r]egular occupation means the occupation you are routinely performing when your disability begins. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location." (AR 113-114.) *See Kennedy v. United of Omaha Life Ins. Co.*, 556 Fed. App'x 893, 896 (11th Cir. 2014) (there was a reasonable basis for the defendant to conclude that the plaintiff could work in her regular occupation when, as dictated by the Policy, it set aside peculiarities of the plaintiff's work and instead considered her occupation generally). Significantly, none of Plaintiff's treating physicians specifically found that Plaintiff had an impairment that prevented her from performing her regular occupation, as defined by the Plan.

Plaintiff argues that the record includes objective medical evidence of disability, including a neurotransmitter laboratory result which indicates Plaintiff tests low for several neurotransmitters that are common in patients suffering from depression, records of cervical disc herniation, and EMG/nerve conduction studies for carpal tunnel syndrome. Plaintiff also contends that her

subjective complaints of pain should be credited.  Plaintiff's contentions are not persuasive.

The medical records indicate that surgery for Plaintiff's carpal tunnel syndrome improved that condition.  And no doctor opined that this condition renders her unable to work.  Rather, Dr. Isaac opined that it would limit use of her hands for only four weeks.  As to the evidence of neruotransmitter testing, while it may support a diagnosis of depression, it does not support a conclusion that Plaintiff is functionally impaired to the extent she is unable to perform her regular occupation.  The same can be said for the evidence of disc herniation.  Indeed, as discussed, Dr. Polanco recognized degenerative spine findings and imposed some limitations.  Those limitations, however, are not sufficient to find Plaintiff unable to perform the *material and substantial duties of her regular occupation*, as defined by the Plan.  As to Plaintiff's subjective complaints of pain, they are not supported by objective evidence.  And, two of her doctors reported she had no neurological deficits or motor weakness.[6]

In sum, it cannot be said that Prudential's determination is wrong, after a *de novo* review of the record.

**B.**     **Discretion Under the Plan**

Under *Firestone* and *Williams*, an ERISA administrator's claim determination is reviewed *de novo*, unless the ERISA plan at issue confers upon the administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115. Prudential contends that the Plan vests it with discretion to make eligibility determinations. Plaintiff disagrees. Notwithstanding the conclusion that Prudential's decision was not wrong, since Prudential contends it is vested with discretion under the Plan, and the Plan supports Prudential's contention,

---

[6] Dr. Tracy reached a contrary result.  However, her opinion was based on Plaintiff's self-reports.

Prudential's determination to terminate Plaintiff's LTD benefits will be reviewed under the lower standard of deferential review, as an alternative to the *de novo* review.

Discretionary authority must be expressly granted in the plan. *Shaw v. Connecticut Gen. Life Ins. Co.*, 353 F.3d 1276, 1282 (11th Cir. 2003); *Guy v. Southeastern Iron Workers' Welfare Fund*, 877 F.2d 37, 38–39 (11th Cir. 1989); *Moon v. Am. Home Assur. Co.*, 888 F.2d 86, 88-89 (11th Cir. 1989). The requisite grant of discretionary authority may be found when the plan confers upon the administrator full and exclusive authority to determine all questions of coverage and eligibility and full power to construe the provision of the plan, or when the plan provides that the administrator's determinations shall be final and conclusive so long as they are reasonable determinations that are not arbitrary and capricious.[7] *Kirwan v. Marriott Corp.*, 10 F.3d 784, 788 (11th Cir. 1994) (citations and quotations omitted); *see also Cagle v. Bruner*, 112 F.3d 1510, 1517 (11th Cir. 1997) ("We have held that reservations of full and exclusive authority to determine all questions of coverage and eligibility along with full power to construe the ambiguous provisions of the plan reserve enough discretion to make the arbitrary and capricious standard applicable.") (citation and quotations omitted); *Guy*, 877 F.2d at 38 (finding grant of discretionary authority where plan stated "full and exclusive authority to determine all questions of coverage and eligibility" as well as "full power to construe the provisions of [the] Trust" belonged to trustees); *Jett v. Blue Cross & Blue Shield of Alabama, Inc.*, 890 F.2d 1137, 1139 (11th Cir. 1989) (language giving the administrator "the exclusive right to interpret the provisions of th[e] Plan, so its decision is conclusive and binding" was sufficient to trigger the arbitrary and capricious standard of review).

---

[7] On the other hand, the *de novo* standard is applied when the plan confers upon the administrator the authority to make initial eligibility determinations according to the terms of the Plan. *Kirwan*, 10 F.3d at 788 (citation and quotation omitted).

To determine whether the Administrator has discretion, all of the plan documents must be considered. *Curran v. Kemper Nat'l Servs., Inc.*, No. 04–14097, 2005 WL 894840, at *5 (11th Cir. Mar. 16, 2005) (requiring examination of all documents that may comprise the plan). Here, two documents relating to the Plan speak to Prudential's authority, the HMA plan document and the SPD. The HMA plan document does not expressly use the term "discretion," whereas the SPD does. The HMA plan document does, however, incorporate by reference the Group Insurance Certificate. Prudential contends that the Group Insurance Certificate unambiguously vests Prudential with discretion to decide LTD claims under the Plan, relying on the language in the HMA plan document. Plaintiff argues that the SPD is not part of the contract between the parties, relying on the language on the first page of the SPD which provides that it is not part of the Group Insurance Certificate. (AR 139.) Prudential responds that Plaintiff's argument ignores the HMA plan document, which it contends unambiguously grants discretion to Prudential.

Regardless of whether the SPD may be considered as aprt of the Plan, the HMA plan document expressly and unambiguously grants Prudential discretionary authority to determine eligibility for benefits and to construe the terms of the plan.  The HMA plan document provides that the Administrator "shall have full power to administer the Plan in all of its details," that the Administrator's powers include the power "[t]o make and enforce such rules and regulation as the Administrator deems necessary or proper for the administration of the Plan;" [t]o interpret the Plan, the Administrator's interpretations thereof in good faith to be final and conclusive on all persons claiming benefits by operation of the Plan;" and "[t]o decide all questions concerning the Plan and the eligibility of any person to participate in the Plan and to receive benefits provided by operation

of the Plan.[8]  (AR 175-176.)  The Eleventh Circuit has held that when a plan confers upon the

administrator these powers, the requisite grant of discretionary authority exists.  *See Kirwan*, 10 F.3d

at 788; *Cagle*, 112 F.3d at 1517; *Guy*, 877 F.2d at 38; *Jett*, 890 F.2d at 1139.  Accordingly,

Prudential's decision is entitled to deference.[9]

### C.   Deferential Standard

When the administrator is vested with discretion, the question is whether a reasonable basis

existed for the administrator's benefit decisions.  *Blankenship*, 644 F.3d at 1354; *Tippitt v. Reliance*

*Standard Life Ins. Co.*, 457 F.3d 1227, 1232 (11th Cir. 2006) (under the arbitrary and capricious

standard of review, even if the court disagrees with the administrator's decision, the court will

uphold the denial if it was not unreasonable.)

As discussed, Prudential was entitled to rely on the opinions of its reviewing physicians.

There is no indication that Prudential's refusal to credit the conclusory opinions of Plaintiff's

---

[8] Plaintiff seems to argue that the Administrator under the HMA plan document is HMA (*see* Dkt. 22 at 6).
However, the definition of Administrator in the HMA plan document belies that argument.  (AR 150
("'Administrator' means the individual(s) or corporation appointed by the Employer to carry out the administration
of the Plan.").) The HMA plan document incorporates the disability insurance contracts under which Prudential is
the Administrator.  (AR 157.)

[9] The Supreme Court's opinion in *CIGNA Corp. v. Amara*, may call into question the role an SPD plays as
an ERISA plan document.  131 S.Ct. 1866, 1878, 179 L.Ed. 843 (2011) ("[W]e conclude that the summary
documents, important as they are, provide communication with beneficiaries about the plan, but that their statements
do not themselves constitute the terms of the plan for purposes of § 502(a)(1)(B)"). Despite the apparent limitation in
considering an SPD as a plan document in *Cigna*, the Eleventh Circuit has limited *Cigna's* holding as
"preclud[ing] courts from enforcing summary plan descriptions, pursuant to § 1132(a)(1), where the terms of that
summary conflict with the terms specified in other, governing plan documents." *Bd. of Trustees of Nat. Elevator
Indus. Health Ben. Plan v. Montanile*, 593 Fed. App'x 903, 910 (11th Cir. 2014) cert. granted sub nom. *Montanile v.
Bd. of Trustees of Nat. Elevator Health Ben. Plan*, No. 14-723, 2015 WL 1400864 (U.S. Mar. 30, 2015).  The court
explained that "the *Amara* Court's rejection of the proposition that summary plan descriptions "necessarily may be
enforced . . . as the terms of the plan itself" leaves open the possibility that terms in those summaries may, at times,
be enforced, even though they are not always enforceable." *Id.*
    Although *Montanile* is slightly distinguishable from the facts here in that the SPD in *Montanile* was the only
document to lay out the rights and obligations of plan participants and therefore did not conflict with any other plan
document, it is instructive.  Here, the SPD also unambiguously and expressly refers to Prudential's discretion and
therefore does not conflict with the HMA plan document.  This lends further support for the finding that Prudential
has discretionary authority to make eligibility determinations under the plan.

physicians was arbitrary.  *See Gipson v. Admin. Comm. Of Delta Air Lines, Inc.*, 350 Fed. App'x 389, 395 (11th Cir. 2009) (where treating physician's opinion was conclusory and failed to provide any basis for the decision that the claimant  was unable to work, and conflicted with other medical opinions, the administrator's decision was not arbitrary and capricious).  Rather, Prudential thoroughly explained its reasons for discrediting the treating physicians' opinions.  Even if one disagrees with Prudential's reasoning, it cannot be said that its decision to accord more weight to its reviewing physicians' opinions was arbitrary.

Prudential explained that according to the reports of Dr. DiSanto and Dr. Fattah, no musculoskeletal or neurological deficits were found on examinations. (AR 927).  Prudential found that the medical records did not contain sufficient objective data to corroborate the existence of impairment and that the majority of the information pertaining to Plaintiff's mental health and neuropsychological functioning was based solely on her self-report. (*Id.*)  It noted that the treating physicians who opined that she is unable to work based their conclusions on Plaintiff's self-report, (AR 908, 927), and that none of her mental examinations produced abnormal results. Nor was there objective data to corroborate her complaints.  (AR 927.)

Prudential also found that the office notes of Plaintiff's physicians, which included examinations and observations, did not indicate that she presents as a seriously disabled patient. (*Id.*)  Prudential explained that although Dr. Adams opined that Plaintiff is permanently and totally disabled, he did not provide any clinical evidence to support his findings. (AR 909).  Prudential found that Dr. Tracy's, Dr. Tarabishy's, Dr. DiSanto's, and Dr. Fattah's opinions likewise lacked clinical data.  (*Id.*)  And Prudential's external physician opined that based on degenerative spine findings, Plaintiff is restricted from lifting or carrying greater than 20 pounds, but otherwise, there

were no findings that restrict or limit normal and routine activity such as walking, standing, sitting, or use of her upper and lower extremities.  (AR 910).

Finally, based on the vocational review, Prudential determined that Plaintiff's regular occupation does not require her to lift greater than 10 pounds and therefore does not preclude her from performing the duties of her regular occupation (AR 911).   In sum, it was not arbitrary or unreasonable for Prudential to rely on the opinions of its reviewing physicians, and to afford less weight to the opinions of Plaintiff's treating physicians. *See Ray*, 443 Fed. App'x. at 533. A reasonable basis existed for Prudential's decision.  *Blankenship*, 644 F.3d at 1354.

### D.    Conflict of Interest

Plaintiff contends that Prudential's decision is unreasonable in light of its structural conflict of interest.  Plaintiff contends that Prudential engaged in a selective approach to the evidence, unduly relied on its own physicians, ignored objective medical evidence, and has a history of biased claims administration.

When an administrator makes eligibility decisions and is responsible for paying benefits, a structural conflict of interest exists and step six must be addressed. *Blankenship*, 644 F.3d at 1355. The claimant still has the burden to prove that administrator's decision was nonetheless arbitrary, and the administrator need not prove its decision was not tainted by self-interest. *Id.*  Structural conflict of interest remains only one factor in determining whether there was an abuse of discretion. *Id.*  While structural conflict of interest is a factor in the analysis, the basic analysis centers on assessing whether a reasonable basis existed for the administrator's decision.  *Id.* Even where a conflict of interest exists, deference must still be afforded to the plan administrator's "discretionary decision-making" as a whole.  *Id.*

23

Plaintiff's argument in this regard essentially repeats the reasons she contends Prudential's decision was wrong and unreasonable, with the exception of the claimed history of bias.  Having found that Prudential's decision was not wrong or unreasonable, and there being no additional evidence of procedural irregularity or biased claims administration, the Court concludes that Prudential's decision in this case is not rendered unreasonable merely because of a structural conflict of interest.  *See Echols v. Bellsouth Telecommunications, Inc.*, 385 Fed. App'x 959, 961 (11th Cir. 2010) ("[G]iven the eminent reasonableness of the decision, the lack of evidence that any assumed conflict influenced the claims decision indicates that any assumed conflict should be given little weight in judging whether the decision was an abuse of discretion.").  Moreover, while Plaintiff cites a number of cases in which Prudential's decisions were reversed, Plaintiff has not demonstrated that the reversals were based on conflict of interest or bias. And a determination that Prudential was wrong or acted arbitrarily in other cases does not necessarily indicate a history of bias. *See Burgio v. Prudential Ins. Co. of Am.*, No. 06-CV-6793 JS AKT, 2011 WL 4532482, at *8 (E.D.N.Y. Sept. 26, 2011) ("The Court is reluctant to infer an improper motive on the strength of the outcome of other cases.").  Accordingly, this factor is accorded little, if any, weight.

Giving deference to Prudential's discretionary determination that Plaintiff is not entitled to LTD benefits, and observing that a reasonable basis exists for its decision, Plaintiff has not established that Prudential's structural conflict of interest "had sufficient inherent or case-specific importance" to support a finding that its  benefits decision as arbitrary and capricious. *Blankenship*, 644 F.3d at 1357.

Accordingly,

1.     Defendant's Motion for Summary Judgment (Dkt. 18) is **GRANTED**.

24

2.      Plaintiff's Motion for Summary Judgment (Dkt. 19) is **DENIED**.

3.      The Clerk is directed to **ENTER FINAL JUDGMENT** in favor of Defendant Prudential Insurance Company of America and against Plaintiff Deborah Garrett, and to close this case.

**DONE AND ORDERED** this ___7___th day of May, 2015.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

25